UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RONNIE FOOTE,

   Plaintiff,

     v.

DR. STEPHEN CHU, Secretary, U.S.
Department of Energy,

   Defendant.

Civil Action No. 11-1351 (CKK)

**MEMORANDUM OPINION**
(March 5, 2013)

Plaintiff Ronnie Foote filed suit against Dr. Stephen Chu, in his official capacity as Secretary of the United States Department of Energy ("Defendant"), alleging racial discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. ("Title VII"). Presently before the Court is the Defendant's [39] Motion for Judgment on the Pleadings. The Defendant contends that the Plaintiff's claim is non-justiciable insofar as it challenges a national security decision committed to the discretion of the Executive Branch. Upon consideration of the pleadings,[1] the relevant legal authorities, and the allegations in the Plaintiff's Complaint, the Court finds adjudication of the Plaintiff's claims would require the fact finder to review the merits of a national security decision. Accordingly, the Defendant's motion is GRANTED.

**I.  BACKGROUND**

According to the Complaint, in August 2007, Plaintiff received a conditional offer of employment as an Emergency Operations Specialist with the Transportation and Emergency

---

[1] Def.'s Mot., ECF No. [39]; Pl.'s Opp'n, ECF No. [44]; Def.'s Reply, ECF No. [45].

Control Center, part of the National Nuclear Security Administration ("NNSA"), located in Albuquerque, New Mexico. Compl., ECF No. [1], at 1. The NNSA is an agency within the Department of Energy responsible for, among other things "maintain[ing] and enhanc[ing] the safety, reliability, and performance of the United States nuclear weapons stockpile." 50 U.S.C. § 2401(b)(3).

The offer of employment extended to the Defendant was conditioned on Plaintiff receiving a certification from the Human Reliability Program ("HRP"). *Id*. at 2. The Human Reliability Program ("HRP"), established pursuant to Executive Order 10450, "is a security and safety reliability program designed to ensure that individuals who occupy positions affording access to certain materials, nuclear explosive devices, facilities, and programs meet the highest standards of reliability and physical and mental suitability." 10 C.F.R. § 712.1. HRP certification is a rigorous process, requiring, among other things, a high-level ("Q") security clearance, annual security reviews, medical assessments, and random drug tests. 10 C.F.R. § 712.11. HRP certification must be renewed annually. *Id.*

Dr. Daniel Seagrave, Alternate Lead Psychologist for the National Nuclear Security Administration, administered the Plaintiff's psychological interview. Compl. at 2. Dr. Seagrave recommended that the responsible officials deny HRP certification for the Plaintiff. *Id.* The Plaintiff alleges Dr. Seagrave gave "intentionally false information" in his report to Dr. Anthony Traweek, Dr. John Sloan, and Dennis Reese, who ultimately denied Plaintiff's request for certification, causing the conditional offer of employment to be rescinded. *Id*. Specifically, the Plaintiff claims Dr. Seagrave lied about certain answers Plaintiff gave during his interview, improperly contacted Plaintiff's former supervisor, and concocted allegations that Plaintiff was reprimanded while serving in the United States Air Force. *Id*. at 4. Plaintiff alleges Dr.

Seagrave's actions were motivated by Plaintiff's race. *Id*. at 7-8.

## II.  LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." The standard for reviewing a motion for judgment on the pleadings is "virtually identical" to that applied to a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Baumann v. District of Columbia*, 744 F. Supp. 2d 216, 221 (D.D.C. 2010). Because a Rule 12(c) motion "would summarily extinguish litigation at the threshold and foreclose the opportunity for discovery and factual presentation," the district court must approach such motions "with the greatest of care" and deny it "if there are allegations in the complaint which, if proved, would provide a basis for recovery." *Haynesworth v. Miller*, 820 F.2d 1245, 1254 (D.C. Cir. 1987), *abrogated on other grounds by Hartman v. Moore*, 547 U.S. 250 (2006). The Court is limited to considering the facts alleged in the complaint, any documents attached to or incorporated in the complaint, matters of which the Court may take judicial notice, and matters of public record. *Baumann*, 744 F. Supp. 2d at 222.

## III.  DISCUSSION

Relying on the Supreme Court's decision in *Department of Navy v. Egan*, 484 U.S. 518 (1988), the Defendant moves for judgment on the pleadings on the grounds that Title VII claims arising from the denial of an HRP certification are non-justiciable. The Plaintiff contends that the HRP certification at issue was a suitability determination, *not* a security clearance, and thus falls outside the scope of *Egan* and its progeny. Although the Plaintiff is correct that the HRP certification is not a security clearance, that distinction is not dispositive under *Egan*. At its core, the Plaintiff's Complaint challenges the merits of the Defendant's predictive judgment that the

3

Plaintiff did not meet the standards of reliability and security necessary for employment in a position involving the United States nuclear weapons program. Semantics aside, the Plaintiff's claim is barred by *Egan*.

      *A.*      *Department of Navy v. Egan and Subsequent Cases*

In *Egan*, the Supreme Court considered whether the Merit Systems Protection Board had the authority to review the substance of an underlying decision to deny or revoke a security clearance. The Court concluded that the Board lacked such authority, for two primary reasons. First, "predictive judgments" of the kind involved in denying or revoking a security clearance "must be made by those with the necessary expertise in protecting classified information." 484 U.S. at 529. "The general standard is that a clearance may be granted only when clearly consistent with the interests of the national security." *Id.* at 528 (citation omitted). "[I]t is not reasonably possible for an outside nonexpert body to review the substance of such a judgment and to decide whether the agency should have been able to make the necessary affirmative prediction with confidence." *Id.* at 529. Second, the Court noted that the standard of review employed by the Board, a preponderance of the evidence, is seemingly inconsistent with standard by which security clearances are granted, that is, "clearly consistent with the interests of national security." *Id.* at 531.

Courts subsequently extended *Egan* to bar claims under Title VII arising from the denial of a security clearance, noting district courts cannot proceed with discrimination actions under the burden shifting scheme of *McDonnell Douglas* "without reviewing the merits of [the agency's] decision not to grant a clearance." *Ryan v. Reno*, 168 F.3d 520, 523-24 (D.C. Cir. 1999); *see also Beattie v. Boeing Co.*, 453 F.3d 559 (10th Cir. 1994) (finding *Egan* barred a *Bivens* action against a private employer arising from the denial of a security clearance necessary

4

to access the area in which Air Force One was under construction).

Extension of *Egan* to bar decisions other than the denial or revocation of a security clearance has proved more controversial. The D.C Circuit recently addressed whether the plaintiff could pursue a Title VII claim on the basis of allegations that an employee of the FBI reported unfounded security concerns to the FBI's Security Division, prompting an investigation into the plaintiff's continued eligibility for a security clearance. *Rattigan v. Holder*, 689 F.3d 764, 765 (D.C. Cir. 2012). Upon rehearing by the panel, the divided court ruled that *Egan* does not bar Title VII claims arising from the reporting of knowingly false information to the FBI's Security Division.[2] *Id.* at 767; *but see Becerra v. Dalton*, 94 F.3d 145, 149 (4th Cir. 1996) (holding that *Egan* barred judicial review of Title VII claims arising from the "instigation of the investigation into [a] security clearance").

The Defendant cites to the Federal Circuit's decision in *Berry v. Conyers*, 692 F.3d 1223 (Fed. Cir. 2012), in support of his position, which held that *Egan* prevents the Merit Systems Protection Board from reviewing any decision regarding the eligibility of an employee for "sensitive" positions, regardless of whether the position requires access to classified information. *Id.* at 1225. On January 14, 2013 (after the Defendant filed his Reply), the Federal Circuit granted rehearing en banc and vacated the decision on which the Defendant relies. *Berry v. Conyers*, No. 2011-3207, 2013 WL 262509, Order (Fed. Cir. filed Jan. 24, 2013).

Although several cases have tangentially involved suitability determinations in the context of *Egan*, none of the cases are directly on point. The D.C. Circuit noted in *Bennett v. Chertoff*, 425 F.3d 999 (D.C. Cir. 2005), that national security issues and suitability

---

[2] The Defendant questioned the validity of *Rattigan* in his Reply, noting the defendant filed a petition for rehearing en banc. Def.'s Reply at 4, n.1. The D.C. Circuit denied the petition on November 1, 2012.

determinations are not mutually exclusive considerations. *Id.* at 1003. However, the *Bennett* court did not reach the issue of whether certain (or all) suitability determinations are unreviewable under *Egan*. Rather, the dispositive question before the court was whether the defendant could assert the plaintiff was terminated because she was unable to sustain a security clearance, even though the original stated basis for her termination was a negative suitability determination. *Id.* at 1001. The court found TSA could properly raise the denial of the plaintiff's security clearance as grounds for her termination, and affirmed dismissal of the complaint, explaining that a court could not determine whether or not the security clearance explanation was pretextual without running afoul of *Ryan*. *Id.* at 1003.

The Ninth Circuit in *Brazil v. Department of Navy*, 66 F.3d 193 (9th Cir. 1995), addressed a claim similar to that asserted by the Plaintiff in this case. Brazil sought to challenge the revocation of his Nuclear Weapons Personnel Reliability Program certification. *Id.* at 196-97. The Ninth Circuit described the certification as "an accreditation to work around sensitive nuclear material, and is a prerequisite to employment in certain capacities or on certain Navy ships." *Id.* at 195, n.1. Noting that the certification "is not the same as a security clearance," the *Brazil* court explained that "the Navy is anxious to treat it as such, and Brazil acquiesces. Thus we will treat PRP certification and security clearance decisions as equivalent for purposes of this opinion." *Id.* at 195, n.1 (emphasis added).

### B. *Egan Bars Judicial Review of the Plaintiff's Claim*

Although not directly on point, the D.C. Circuit's analysis in *Rattigan* provides useful guidance in determining whether the Plaintiff's claim in this case is justiciable:

> [T]he Court in Egan emphasized that the decision to grant or deny security clearance requires a [p]redictive judgment that must be made by those with the necessary expertise in protecting classified information. Likewise, under

> Executive Order 12,968, the decision to grant or deny access to classified information must be based on judgments by appropriately trained adjudicative personnel. It is this expert, predictive judgment made by appropriately trained personnel that Egan insulates from judicial review.

*Rattigan*, 689 F.3d at 767. The Plaintiff is challenging precisely this type of "predictive judgment" the *Rattigan* court indicated should be insulated from review.

"The HRP is a security and safety reliability program designed to ensure that individuals who occupy positions affording access to certain materials, nuclear explosive devices, facilities, and programs meet the highest standards of reliability and physical and mental suitability." 10 C.F.R. § 712.1. HRP itself requires a "Q" access authorization, *id.* at § 712.11(a)(1), the Department of Energy equivalent of a Top Secret security clearance, *id.* at § 25.15(a). The certification further requires, among other things, annual submission of the SF-86 Questionnaire for National Security Positions, completion of a counterintelligence evaluation, and an "annual supervisory review, medical assessment, management evaluation, and a DOE personnel security review." *Id.* at § 712.11(a). Thus, while the HRP is not itself a "security clearance" in the traditional sense of the term, it is a more rigorous screening program created so that relevant individuals within the Department of Energy make the annual predictive judgment as to whether providing a particular individual access to nuclear programs is consistent with security and reliability concerns.

The *Rattigan* court emphasized in its decision on rehearing that the decision did not permit claims against trained individuals charged with making security clearance-related decisions. 689 F.3d at 767-78. By contrast here, the Plaintiff's allegations target one of the trained individuals charged with making decisions relating to HRP certification. The Plaintiff alleges that "Dr. Seagrave's rationale for denying Mr. Foote HRP certification was full of errors and deliberately misleading." Compl. at 2. As a result, the Plaintiff claims that the Lead

Psychologist for HRP (Dr. Anthony Traweek) and the HRP Certifying Official (Dennis Reese) relied on "intentionally false information" provided by Dr. Seagrave. *Id*. In other words, the Plaintiff challenges the predictive judgment of trained adjudicative personnel responsible for determining whether an individual satisfies the security standards necessary for employment in a position involving the nation's nuclear weapons.

The nature of the Plaintiff's claim creates the same issue that led the *Bennett* court to affirm dismissal of the complaint: the court cannot adjudicate the merits of the Plaintiff's Title VII claim without second-guessing the merits of the HRP certification decision. This issue arises on two levels in this case. First, the fact finder would have to evaluate the recommendation by Dr. Seagrave, which recommended against certifying the Plaintiff because of his previous "irresponsible work and performance," and the Plaintiff's lack of "full and accurate disclosure about [his] history and uncooperative behavior," which created a "significant concern' for HRP duties." Compl. at 3-4. The fact finder would have to substitute its judgment for the predictive judgment of the psychologist responsible for evaluating whether or not the Plaintiff posed a security threat if provided access to the United States nuclear weapons program or related materials. Second, assuming the fact finder found Dr. Seagrave's recommendation was based on an improper purpose, the fact finder would then be forced to determine whether the final decision to deny the Plaintiff HRP certification was based on Dr. Seagrave's recommendation. For "reasons ... too obvious to call for enlarged discussion," *Egan*, 484 U.S. at 529 (citation omitted), the protection of nuclear weapons and related materials must be committed to the discretion of the agencies responsible for those programs. "[I]t is not reasonably possible for an outside nonexpert body," be it the Court or a jury, "to review the substance of such a judgment and to decide whether the agency should have been able to make the necessary affirmative prediction

with confidence." *Id.*

The Plaintiff's Opposition emphasizes that federal regulations distinguish between security clearances and suitability determinations, and notes that certain suitability determinations are appealable to the Merit Systems Protection Board. Pl.'s Opp'n at 3-4 & n.1 (citing 5 C.F.R. §§ 731.101(a), 731.501(a)). The Human Reliability Program at issue in this case is not part of the civil service regulations cited by the Plaintiff. Part 731 of Title 5 of the Code of Federal Regulations "establish[es] criteria and procedures for making determinations of suitability and for taking suitability actions regarding employment in covered position." 10 C.F.R. § 731.101(a). As part of those procedures, when a relevant agency "takes a suitability action against a person, that person may appeal the action to the Merit Systems Protection Board." 10 C.F.R. § 731.501(a). The HRP regulations are set forth in Part 712 of Title 10 of the Code of Federal Regulations, as part of the regulations relating to the Department of Energy. The Plaintiff's citation to regulations regarding *other* suitability determinations is unavailing, particularly given the unique subject of the HRP: nuclear weapons.

The Plaintiff further contends that even under *Egan*, the Board (and thus the Court) can review claims that the necessary procedural protections were not afforded to an individual before his/her security clearance, and thus procedural claims regarding suitability claims are likewise justiciable. In support of this theory, the Plaintiff offers new allegations in his Opposition in support of the argument that he is challenging the process afforded in denying his HRP certification, rather than the merits of the decision itself. Construing the Plaintiff's *pro se* Complaint liberally, none of the allegations even verge on asserting a due process violation. The Plaintiff cannot simply amend the allegations in his Complaint by including new assertions and legal theories of liability in his Opposition. Arbitraje Casa de Cambio, S.A. de C.V. v. U.S.

Postal Serv., 297 F. Supp. 2d 165, 170 (D.D.C. 2003). Assuming *arguendo* the Court could entertain a procedural claim arising from the denial of Plaintiff's HRP certification, no such claim is alleged in this case.

## IV. CONCLUSION

For the foregoing reasons, the Court finds the Plaintiff cannot pursue a claim under Title VII challenging the merits of the Defendant's decision to deny Plaintiff certification under the Department of Energy's Human Reliability Program. The Plaintiff's claim would require the Court to evaluate the merits of the predictive judgment made by trained individuals finding that the Plaintiff did not satisfy the security and reliability requirements necessary for access to the United States nuclear weapons program and related materials. Suitability determinations as a general matter may not be insulated from Title VII challenges, but permitting this particular claim would run afoul of Supreme Court and Circuit precedent which require courts to leave national security decisions to the discretion of the responsible agency. Accordingly, the Defendant's [39] Motion for Judgment on the Pleadings is GRANTED and the Complaint is DISMISSED.

An appropriate Order accompanies this Memorandum Opinion.

*/s/*
**COLLEEN KOLLAR-KOTELLY**
UNITED STATES DISTRICT JUDGE